RECEIVED
BY MAIL
APR 7 2005
CLERK US DIST COURT
MINNEAPOLIS MN

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

**CHRISTOPHER PAUL GILES,**

**Petitioner/Defendant,**

**v.**

**Civil Case Number: To Be Assigned**
**Criminal Case No.: 02-CR-354 (01) RHK/AJB**

**UNITED STATES OF AMERICA,**

**Respondent/Plaintiff.**

**Honorable Richard H. Kyle**

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO TITLE 28, UNITED STATES CODE, SECTION 2255**

---

**NOW COMES** Christopher Paul Giles, Petitioner/Defendant ("Petitioner"), pro se, in the above entitled matter and does respectfully submit and file this **"MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO TITLE 28, UNITED STATES CODE, SECTION 2255"** annexed hereto, and does urge this Honorable Court to consider the following:

## I. PRELIMINARY STATEMENT

In accordance with the mandate of the decision handed down by the United States Supreme Court in Haines v. Kerner, 404 US 519, 520 (1972), because the Petitioner is a pro se litigant without assistance of counsel, this Court based on but not limited to these few reasons must liberally construe the instant Motion and all other pleading, motions and things alike, rather than to hold him to the same standards as an attorney.

This Circuit rendered a similar opinion in Horsey v. Asher, 741 F.2d 209, 211-13 (8th Cir. 1984).



SCANNED
APR 12 2005
leah
U.S. DISTRICT COURT MPLS

## II. INCORPORATION BY REFERENCE

Petitioner hereby incorporates by reference any and all court records, files, motions and, but not limited to, any and all post-sentencing proceedings and motions, including all appellate matters, motions, rulings and things alike, that either directly or indirectly pertain to the above-entitled numbered criminal case, as if same were set forth herein at length, as if same were set forth herein.

## III. JURISDICTION

Jurisdiction is invested in this Court pursuant to Title 28, United States Code, Section 2255. This Motion is filed within the period of limitation and is within the statutes as provided within the AEDPA.

## IV. PROCEDURAL HISTORY

On November 13, 2002, a one-count Indictment was filed in the District of Minnesota charging Petitioner with Possession with Intent to Distribute in Excess of 500 Grams of Methamphetamine which violated Title 21 United States Code, Sections 841(a)(1) and 841(b)(1)(A).

On February 13, 2003, Petitioner appeared before the Honorable Richard H. Kyle, and entered a plea of guilty to Count I.

On May 19, 2003, Petitioner was sentenced to a 121 months imprisonment.

Petitioner appealed his sentence to the Eighth Circuit Court of Appeals.

On April 8, 2004, the Eighth Circuit Court of Appeals affirmed his judgment.

## V. SUMMARY OF ISSUES

Under the principle announced in both Blakley v. Washington and United States v. Booker/Fanfan, Petitioner is entitled to a sentence reduction to effect elimination of sentence enhancements and mandatory minimums supported by facts not found by a jury or admitted by defendant.

VI. ARGUMENT

A. PETITIONER'S GUIDELINE CALCULATION APPLIED AN INCORRECT DRUG QUANTITY WHICH WAS NOT INCORPORATED WITHIN PETITIONER'S INDICTMENT, NOR ADMITTED TO BY PETITIONER

On November 13, 2002, a one-count Indictment was filed in the United States District Court, District of Minnesota, charging Petitioner with Possession with Intent to Distribute in Excess of **500 Grams of Methamphetamine** in violation of 21 USC §§ 841(a)(1) and 841(b)(1)(A).

On February 13, 2003, Petitioner appeared before the Honorable Richard H. Kyle, United States District Judge. During the plea colloquy, the only mention of drug quantity was by Jennifer Smith, Assistant United States Attorney which stated the following:

> "Your Honor, Mr. Giles has agreed to plead guilty to Count I of the indictment charging him with possession with intent to distribute in excess of 500 grams of methamphetamine in violation of Title 21 U.S.C., Section 841(a)(1) and 841(b)(1)(A)."

Plea Transcript, page 7, lines 5-9.

Furthermore, when AUSA Smith examines Petitioner, she again restates the drug quantity by providing the following question:

> "Mr. Giles, on or about October 1st, 2002, did you, at your home in St. Paul, Minnesota, possess more than 500 grams of a substance containing a detectable quantity of methamphetamine?"

Plea Transcript, page 9, lines 14-16.

In Blakely v. Washington, 124 S.Ct. 2531 (2004), the Supreme Court had before it a determinate sentencing scheme quite similar to the Federal Sentencing Guidelines. 124 S.Ct. at 2534-35. Blakely had pleaded guilty to a kidnapping charge which, standing alone, carried a sentencing range under Washington's guideline scheme of 49 to 53 months. However, Washington's sentencing scheme allowed a judge to impose a sentence above the presumptive sentencing range if the judge found a substantial and compelling reason which justified an exceptional sentence. The trial court in that case determined

that the defendant had acted with "deliberate cruelty," which was a ground for an upward enhancement and consequently enhanced the defendant's sentence to 90 months. The defendant appealed, arguing that this sentencing procedure deprived him of his federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his punishment. Id. at 2534-36.

The Supreme Court found that this enhancement violated the defendant's right to a trial by jury as set forth in Apprendi v. New Jersey, 530 US 466 (2000). Under Apprendi, the law is clear that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Apprendi at 490.

Following a discussion in Apprendi and Ring v. Arizona, 536 US 584 (2002), the majority in Blakely stated, "In each case, we concluded that the defendant's constitutional rights had been violated because the judge had imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding." 124 S.Ct. at 2537.

Additionally, the dissenting opinion surmised that "Washington's sentencing system is by no means unique. Numerous other States have enacted guidelines as has the Federal Government." Id. at 2548.

It did not take long for the United States Sentencing Guidelines ("USSG") to come into question and one-half year later the Supreme Court opined in United States v. Booker, 543 US ____ (2005), that relying on Blakely, the Court held that the sentence violated the Sixth Amendment and instructed the District Court either to sentence Booker within the sentencing range supported by the jury's findings or to hold a separate sentencing hearing before a jury.

Petitioner's circumstances are no different from Blakely and/or Booker in that his Indictment and plea colloquy supported a sentencing guideline which

exceeded the statutory maximum. By utilizing Blakely and Booker, Petitioner's offense level was incorrectly applied when it calculated the drug quantity at an offense level higher than offense level 32. In this case, the offense level was calculated at offense level 34. This two point increase, along with a mandatory minimum does not comport to the Supreme Court's opinions as rendered in both Blakely and Booker.

## B. THE TESTS IN TEAGUE V. LANE, APPLIED TO BOOKER, REQUIRE THAT BOOKER BE GIVEN RETROACTIVE EFFECT

### 1. Booker does not announce a "New Rule"

By its own terms, the standards articulated in Teague v. Lane, 489 US 288 (1989)(plurality opinion) for granting retroactive effect to principles of constitutional law apply only to "new" rules. The Supreme Court decisions in Blakely and, more directly, Booker are not in fact "new" rules. They rely entirely on Apprendi v. New Jersey, 530 US 466 (2000) for their constitutional meat and provide more detail of the rule expressed in Apprendi. This much is obvious from the very language of the decisions.

Focusing on Booker alone (it echoes Blakely in this regard): "the Government asks us to determine whether our Apprendi line of cases applies..."; "[n]one of our prior cases is inconsistent with today's decision"..."we reaffirm our holding in Apprendi..."; "[a]pplying its decision in Apprendi... and Blakely...the Court holds that...." Nothing could be more clear: The Booker court is applying the principle established by Apprendi, not creating a "new" one.

### 2. Even if new, the Booker rule is still substantive

Assuming arguendo that Booker's holding is somehow "new" for Teague purposes, it should nevertheless be given retroactive effect because it is in fact "substantive", as that term is understood in Teague: "It alters the range of conduct or the class or persons that the law punishes." 124 S.Ct. at 2523. It does this in two ways.

First, Booker's application of the Sixth Amendment to the sentencing regime formerly mandated by the United States Sentencing Guidelines "USSG" alters the range of conduct in the practical sense that it bears on the polarity of sentencing severity formerly contemplated by the USSG. No longer is it practically likely that a defendant facing a base offense level of six will, as often happened, be sentenced to a level reflecting twenty points by virtue of judicial enhancement: Enhancements will not be alleged in indictments and submitted to the requirement of proof beyond a reasonable doubt with anything near the frequency heretofore. This much is apparent from the reaction from the prosecutorial community to date to Blakely and Booker.

Secondly, and even more telling, the beyond a reasonable doubt will practically lead to different outcomes as compared to pre-Booker jurisprudence, in the sense that some feature of a defendant's conduct will not be readily suspectible to prove beyond a reasonable doubt, and other might. Thus not only will the spectrum of possible punishments be contracted, but the mix of action which will come into play in the play of evidence will inevitably change to reflect the new, more stringent standard.

Lastly, even if the Booker opinion itself recognizes the substantive nature of its Sixth Amendment holding: It is "not motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance." (emphasis added.)

### 3. Even if procedural, the Booker rule is a "watershed"

Assuming arguendo, that Booker's ruling is, for Teague purposes, procedural, it nevertheless fits within that class of cases articulating "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." 489 US at 311.

Booker implicates "fundamental fairness" precisely by its collapsing of

the "enhancement" superstructure which led so often to vast disparates between the base offense level and actual sentence. It is obvious that the necessity of presenting proof beyond a reasonable doubt to a jury of these enhancements will lead to a reduction of cases in which they will come into play. Booker itself thus implies that the former guidelines scheme was fundamentally unfair, permitting defendants to be sentenced in contravention of their Sixth Amendment rights. To allow such results to stand after Booker casts doubt on the "fundamental fairness" of the judicial process.

Lastly, the beyond a reasonable doubt standard itself goes to the heart of "fundamental fairness", representing as it does a bedrock principle of the criminal law. Its application for the first time to the "enhancement" scheme of the guidelines is nothing if not a "watershed".

## VII. CONCLUSION

The Supreme Court's recent decisions in Blakely, Booker, and Fanfan affords an individual the opportunity to be sentenced on a reasonable doubt standard. This did not happen here. In this case, Petitioner clearly agrees to plead guilty to Count I of the Indictment. A count which outlines a charge of Possession with Intent to Distribute in Excess of **500 Grams of Methamphetamine**. Relevant weights were never identified during the plea colloquy. The Petitioner simply pled guilty to a weight exceeding 500 grams. Petitioner stipulated to a guidelines offense level of 34; however, no relevant weights were ever outlined within the plea agreement. How difficult would it have been for the Government to incorporate this within the Plea Agreement? Furthermore, the Government **not once** mentioned a specific weight but continued to mention "In excess of 500 grams of methamphetamine." (Plea Hearing Transcript, page 7, lines 7-8, and page 9, lines 15-16).

The Government will attempt to argue that Blakely and Booker are not retroactive and that various circuits have already ruled on this issue; how-

ever, various circuits also ruled on Blakely's application to the United States Sentencing Guidelines arguing various moot aspects and on January 12, 2005, the Supreme Court overruled many circuits interpretation of Blakely.

"Reasonableness." This was incorporated throughout the Booker opinion and at what point does a judge post-Booker calculate the reasonableness of a sentence and/or a downward departure? A judge may now take numerous factors into consideration when sentencing a defendant.

At sentencing, the Court made the following statement in respect to the guidelines pre-Booker:

> "...It's a decision that I don't make. I am not trying to apologize for it, I'm simply, so you understand it, that Congress, in effect, controls the definition of crimes and what they deem to be the appropriate sentences for those crimes...So to that extent I have to accept as a judge what is presented to me...I have certain discretion in certain items but at least I found it on the record before me that I can't make an exception in this case."

(Sentencing Transcript, page 11, lines 12-23).

**WHEREFORE,** Christopher Paul Giles, Petitioner/Defendant, pro se, prays that this Court **GRANT** the following relief:

**A.** Resentence Petitioner to a guidelines offense level consistent with the opinions presented within Blakely, Booker, and Fanfan;

**B.** Reconsider any downward departure aspect as argues during the sentencing hearing; and,

**C.** Any other relief that this Court deems necessary in the interest of justice and judicial integrity.

Respectfully submitted:

Dated: April 5, 2005

Christopher Paul Giles,
Petitioner/Defendant, pro se
Federal Register Number 10718-041
Federal Prison Camp - Duluth
Post Office Box 1000
Duluth, Minnesota 55814-1000